IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| R.Y., a minor and by his next friend, Jessica Young,<br><br>Plaintiff,<br><br>v.<br><br>PRINCE WILLIAM COUNTY SCHOOL BOARD,<br><br>Defendant. | Civil Action No. 1:25-cv-2163 (RDA/WEF) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on: (i) Defendant Prince William County School Board's ("PWCSB") Motion to Dismiss (Dkt. 28) (the "PW MTD"); (ii) Defendant Frank Aschmann's Motion to Dismiss (Dkt. 31) (the "Aschmann MTD"); and (iii) Defendant Lisa Coons' Motion to Dismiss (Dkt. 42) (the "Coons MTD"). This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). These matters have been fully briefed and are now ripe for disposition. Considering the Motions together with the Amended Complaint (Dkt. 26), the Memoranda in Support (Dkts. 29, 32, 43), Plaintiff's Oppositions (Dkts. 35, 36, 37, 38, 45), and Defendants' Replies (Dkts. 39, 40, 46), this Court GRANTS the Motions for the reasons that follow.

# I. BACKGROUND

## A. Factual Background[1]

This action is brought by R.Y. ("Student" or "Plaintiff") and his mother ("Parent"). Dkt. 26 ¶ 1. Student is nonverbal and autistic. *Id.* He is also diagnosed with Sensory Processing Disorder, PANDAS, OCD and Apraxia of Speech. *Id.* The Court notes that the Complaint reflects the Parents' efforts to achieve the best outcome for Plaintiff's educational needs.

Plaintiff alleges that he needs one-on-one care every moment of the day—whether at school, at home, or in a parking lot—for safety, self-care, managing expectations and participating effectively in his educational day. *Id.* ¶ 20. He asserts that he is fully dependent on others for his daily management needs. *Id.* Plaintiff asserts that he and his family are learning to speak American Sign Language ("ASL") fluently at home and ASL is Student's primary language. *Id.* ¶ 21. He further alleges that he has been asked to communicate with his Augmentative and Alternative Communication ("AAC") device at school. *Id.* Due to Student's history of eloping from the classroom and inability to effectively execute all personal care skills independently, Plaintiff asserts that he needs a self-contained classroom with support from a 1:1 aide. *Id.* ¶ 22.

During the summer of 2023, Plaintiff asserts that Parkside Middle School was unable to provide an ESY service provider to provide the services consented to in the Individualized Educational Program ("IEP"). *Id.* ¶ 23. Plaintiff alleges that PWCSB provided three hours of relationship building and failed to provide the additional 37 hours required in the IEP. *Id.*

On August 23, 2023, Ryan Wicka, Department Chair, informed Parent by email that PWCSB had not yet hired a permanent 1:1 aide for Student for the 2023-2024 school year. *Id.*

[1] For purposes of considering the instant Motion to Dismiss, the Court accepts all facts contained within the Amended Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

¶ 24. Plaintiff asserts that, after several months of requesting a follow up meeting, an IEP meeting was held on November 8, 2023. *Id.* Plaintiff asserts that, at this meeting, Parent learned that Student's speech services had been changed from the one-on-one services indicated in his IEP to a virtual provider, and then to group services. *Id.*

Additionally, Plaintiff asserts that Parent learned that Student's iPad, used as an AAC device, did not have sufficient battery to last the full length of the school day until 2:50pm and would shut off at approximately 1:30pm daily. *Id.* ¶ 26. Plaintiff asserts that there was no alternative device provided, so Student was unable to communicate with staff for that period of time, as staff did not know ASL. *Id.* Plaintiff further alleges that PWCSB did not send the AAC device on the bus with Student, and no transportation staff knew how to speak ASL. *Id.* ¶ 27. Plaintiff asserts that this left Student with the inability to communicate with anyone on the bus. *Id.*

Plaintiff asserts that Parent was granted a classroom observation on March 14, 2024 and May 20, 2024. *Id.* ¶ 28. During the observations, Plaintiff alleges that the 1:1 aide was observed to complete the assignments for Student, improperly model his AAC device, and failed to engage in social interactions with him. *Id.*

On March 21, 2024, at the "Special Olympics" hosted by Parkside Middle School, Plaintiff asserts that Parent again observed the failure of the 1:1 aide to socially engage Student and her inability to properly utilize and model the AAC device. *Id.* ¶ 29.

Plaintiff asserts that PWCSB has not proposed assistive technology ("AT") services as a related service on any IEP. *Id.* ¶ 30. Plaintiff further asserts that it was not until the IEP meeting on April 4, 2024 that the IEP team confirmed that they had obtained a math curriculum that was tailored to Student's level of instruction. *Id.* ¶ 31. Plaintiff alleges that Student previously received

instruction from the website "Teachers Pay Teachers." *Id.* Plaintiff alleges that Student did not receive specially designed instruction at his level of comprehension and developmental ability. *Id.*

While Parents were attending the IEP meeting on April 4, 2024, Plaintiff alleges that Student attempted to swallow a foam block during a speech session with Speech Pathologist Kathryn Berger and his 1:1 aide Ms. Gamez. *Id.* ¶ 32. Plaintiff asserts that, as Parents were not informed about the incident while they were in the building, they were unaware until April 6, 2024, when they reviewed the log which stated Student "Ate a foam letter- refused to spit it out." *Id.* Plaintiff asserts that this created a sense of confusion and panic on behalf of Parents as to whether Student needed emergency treatment to determine if he had ingested the block. *Id.*

On April 23, 2024, Plaintiff asserts that Parents observed the 1:1 aide's interaction with Student on the field trip to Miracle Field at Helwig Park, where the 1:1 aide made very little attempt to engage in social interactions or communication with Student and instead interacted with other students to which she was not assigned. *Id.* ¶ 33.

On May 21, 2024, Plaintiff alleges that Parents notified PWCSB that Student was being denied access to the Family and Consumer Sciences ("FACS") class because Student could not understand how to sign the requisite permission slip. *Id.* ¶ 34. Plaintiff asserts that PWCSB did not modify the permission slip to Student's level of understanding or facilitate a method for Parents to sign for Student. *Id.*

Plaintiff further alleges that Student was also denied access to the school's behavioral management rewards program "LiveSchool" because Assistant Principal Lowry stated the program was not designed for special needs students. *Id.* ¶ 35.

In June of 2025, Plaintiff asserts that, due to lack of communication, the inability of the school to provide an appropriate 1:1 aide, Student's regression in behavior and academics, and the

lack of appropriate reading and math curriculum, Parents initially requested an administrative transfer to Benton and then Ronald Reagan Middle Schools. *Id.* ¶ 36. Plaintiff asserts that Parents' transfer requests and subsequent appeal were denied. *Id.* Left with no other options, Parents signed a lease to a house within the Reagan School District. *Id.*

Plaintiff asserts that Dr. Jay Lucker, Ed.D., CCC-A/SLP, FAAA, completed a Speech Language and Auditory Processing Independent Educational Evaluation ("IEE") on July 21, 2025. *Id.* ¶ 37. Dr. Lucker stated that Student "has been provided with an AAC communication device, but he does not use it voluntarily… [Student] responds best in understanding linguistic information provided to him when visuals (pictures for example) are provided indicating that he likely would communicate, understand, and express himself the best if he could learn a simple visually based communication system such as ASL. His present AAC device is quite complex based on his language functioning level and his probably cognitive functioning level which may be associated with his diagnosis of ASD." *Id.*

Plaintiff alleges that Dr. Lucker explained that "[Student] fits into what is likely low functioning ASD, and, thus, he needs to learn a system for understanding things spoken to him as well as in communicating his needs, wants, responding to questions and other verbal input using a method that works for him. The present AAC device is not appropriate for him at all. If he is to use an AAC device, it would have to provide ONLY pictures to respond to what he wants to say and to his output responses to what we say to him when a linguistic response is needed. Thus, he likely would do best with what is most appropriate for him which would the use of ASL (American Sign Language)." *Id.* ¶ 38. Dr. Lucker stated: "Since ASL is to be used, he needs a teacher (or aid) who is ASL proficient and can interpret verbally what he says for the teacher and others to understand him, and can interpret what is spoken to him into appropriate ASL… Over time, he

may start to learn to spell words. Once he can do this for all of the words he wants to use in communication, he could then use the AAC device. However, to start, no AAC device should be used. Focus on ASL for him to respond and, until he learns to respond appropriately to what is said, use ASL input." *Id.* ¶ 39. Plaintiff asserts that Student's test for "Receptive Language and Expressive Vocabulary performance revealed that his language knowledge (receptive vocabulary) was at the mean for children 3- years-old (preschool level)… Thus, interventions are needed, and the use of an AAC device is likely far above where he can function if the device is not merely choosing pictures and not spelling out words. Overall, then, he has severe language and communication abilities when we expect him to use his AAC device." *Id.* ¶ 40.

Plaintiff then alleges that Dr. William Ling, Ph.D., conducted a psycho-educational IEE on July 28, 2025. *Id.* ¶ 41. He stated:

> [Student]'s disorganization suggests multiple processing difficulties that limit [Student]'s availability to treatment and intervention. It is noted that the difficulties were associated with [Student] showing a reliance on one-on-one intervention and support to engage, therefore suggesting a need for a pointed and direct intervention to help [Student] surmount the difficulties associated with his multiple processing difficulties. Even then, [Student] shows fragile capacities to benefit from this support. Further, observation of [Student]'s engagement with his teacher, who uses a combination of a communication device and American Sign Language, suggests a fluctuating adherence to either protocol, therefore diluting the power of the individual interventions to facilitate [Student]'s communication or responding by creating confusion about how to respond from moment to moment. observation of [Student]'s engagement with his teacher, who uses a combination of a communication device and American Sign Language, suggests a fluctuating adherence to either protocol, therefore diluting the power of the individual interventions to facilitate [Student]'s communication or responding by creating confusion about how to respond from moment to moment.

*Id.* ¶ 41.

Plaintiff asserts that, from the onset of the 2025-2026 school year, Student arrived at home by bus prior to the end of the school day. *Id.* ¶ 42. He alleges that Parent notified Defendant

School Board of this violation by email and did not receive a response. *Id.* Parent also notified the IEP team at the September 4, 2025 meeting. *Id.*

Plaintiff asserts that PWCSB has failed to provide all but a few of the Extended School Year ("ESY") services for the 2022-2023, 2023-2024, and 2024-2025 school years as consented to in the IEPs. *Id.* ¶ 43. Plaintiff further asserts that Student was unable to participate in the classroom Thanksgiving celebration in November because the staff indicated they could not change the food offered to include something that Student would eat as a student with an aversion to many foods as related to his disability of Autism. *Id.* ¶ 44.

Plaintiff alleges that Student's grades were not objectively graded based on his performance. *Id.* ¶ 45. Parent has stated that she is concerned he is receiving A's regardless of whether it was Student or the 1:1 aide who completed the work, and that Student's grades are not reflective of his actual mastery of the information. *Id.* Plaintiff asserts that Student's online class schedule and report card for the 2025-2026 school year reflect general education classes for which he is not enrolled or capable of based on his disability. He has also received A's for classes such as Pre-Algebra. *Id.*

On November 18, 2025, Plaintiff asserts that Ms. Prediger, the FACS teacher, informed Parent in a parent-teacher conference that she was having Student practice "friendship" social skills with a decorated wooden egg as the "friend." *Id.* ¶ 47. Parent has repeatedly stated that Student is not receiving instruction that is modified to Student's level of understanding and developmental capability for the FACS class and has requested for the curriculum to be modified. *Id.* ¶ 48. Parent is not receiving direct Occupational Therapy ("OT") to assist with skills for daily living, such as toileting, and instead was provided indirect services to be performed by Parent at home. *Id.* ¶ 49.

By Due Process Complaint ("DPC"), dated June 18, 2025, Parent alleged that PWCSB denied Student a Free Appropriate Public Education ("FAPE") for the 2022-2023 and 2023-2024 school years and Extended School Year ("ESY") for the 2024-2025 school year. Parent requested as relief, *inter alia*, an order seeking an award of Compensatory Services and Education in the amount of $123,165. *Id.* ¶ 50. On June 26, 2025, Counsel for Parent emailed the Virginia Department of Education ("VDOE") Office of Dispute Resolution ("ODRAS") to inform them that they had not appointed a hearing officer within five business days. *Id.* ¶ 51. The Office of the Executive Secretary of the Supreme Court of Virginia ("OES") appointed Defendant Aschmann to the case on June 26, 2025. *Id.* ¶ 52.

A Pre-Hearing Conference was held on July 18, 2025 and addressed the following: (i) whether PWCSB denied Student a FAPE for the 2022-2023 and 2023-2024 school years; (ii) whether to award compensatory services and education in the amount to be proven at hearing; and (iii) whether PWCSB failed to provide ESY for the 2022-2023, 2023-2024, and 2024-2025 school years. *Id.* ¶ 53. Aschmann required all motions to be mailed over Plaintiff's objection. *Id.* ¶ 54. He also declined to provide a written Pre-Hearing Order over the objection of Counsel for Defendant School Board. *Id.* ¶ 55.

Counsel for Defendant School Board filed a Motion for Issuance of Written Determination of Issues on July 29, 2025, which was denied by Defendant Aschmann. *Id.* ¶ 56. On August 11, 2025, Plaintiff filed a Motion to Recuse and Motion to Continue, which requested that Aschmann recuse himself for failure to timely administer his duties as a hearing officer. *Id.* ¶ 57. Aschmann declined to recuse himself and declined to continue the matter. *Id.*

On August 13, 2025, Aschmann emailed an order granting PWCSB's Motion to Dismiss all claims arising before June 18, 2023. *Id.* ¶ 58.

On August 17, 2025, Plaintiff filed another motion for a continuance and stated that counsel for Parents had not received any mailed correspondence and that Parents were therefore not able to receive effective representation. *Id.* ¶ 60. Plaintiff further stated that Student did not have transportation in place provided by PWCSB and that Student would have trouble transitioning with a new classroom. *Id.* Plaintiff also stated that both expert witnesses were unavailable. *Id.* Plaintiff also stated that PWCSB had not provided any of the Student's educational records through FERPA or FOIA requests. *Id.* Plaintiff additionally stated that Parents and the VDOE observer had been left off of correspondence. *Id.*

On August 19, 2025, PWCSB filed a Motion *in Limine* seeking dismissal of all of Parents' exhibits and witnesses. *Id.* ¶ 61.

On August 20, 2025, Plaintiff filed another motion for a continuance and motion to recuse by overnight mail. *Id.* ¶ 62. Plaintiff then requested a second pre-hearing conference to address the motions. *Id.* ¶ 63. Aschmann declined to schedule such a conference. *Id.*

On August 22, 2025, Aschmann denied the motion to continue and for recusal. *Id.* ¶ 64. That same day, Plaintiff informed Aschmann that the VDOE observer had been left off of all correspondence. *Id.* ¶ 65.

At the due process hearing on August 25, 2025, PWCSB presented its hard copy motion to dismiss, which Aschmann granted. *Id.* ¶ 66. On August 26, 2025, Aschmann issued the Order to dismiss the complaint. *Id.* ¶ 67.

Plaintiff asserts the following claims: (i) an administrative appeal pursuant to the Individuals with Disabilities Education Act (the "IDEA"); (ii) a violation of Section 504 of the Rehabilitation Act based on a denial of equally effective instruction; (iii) a violation of Section 504 based on a limitation of Student's enjoyment of a right, privilege, or opportunity; (iv) a Section

1983 claim against Aschmann in his individual capacity; (v) a violation of Title II of the Americans with Disabilities Act (the "ADA"); (vi) a second alleged violation of Title II of the ADA; and (vii) a Section 1983 claim against Coons and the VDOE.

### B. Procedural Background

On November 24, 2025, Plaintiff filed the Complaint. Dkt. 1. After an extension of time, on January 23, 2026, PWCSB and Aschmann filed motions to dismiss. Dkts. 15, 19. On February 13, 2026, Plaintiff filed an Amended Complaint. Dkt. 26. On February 18, 2026, the Court denied the pending motions to dismiss as moot. Dkt. 27.

On February 27, 2026, PWCSB filed the PW MTD and Aschmann filed the Aschmann MTD. Dkts. 28, 31. On March 10, 2026, Plaintiff filed the Oppositions. Dkts. 35, 36, 37, 38. On March 16, 2026, Defendants PWCSB and Aschmann filed their Replies. Dkts. 39, 40.

On May 1, 2026, Coons filed her MTD. Dkt. 42. On May 15, 2026, Plaintiff filed his Opposition. Dkt. 45. On May 21, 2026, Coons filed her Reply. Dkt. 46.

## II. STANDARD OF REVIEW

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,'

nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion. *See Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).

## III. ANALYSIS

The Court begins with the individual claims against Aschmann, Coons, and the VDOE in their motions. The Court will then turn to the administrative appeal of Aschmann's order.

### A. The Section 1983 Claim Against Aschmann

As both Plaintiff and Aschmann agree, where a Section 1983 claim is asserted against an administrative hearing officer (like Aschmann) judicial immunity may apply and "the determination of immunity would depend on whether the alleged conduct occurred within the scope of their adjudicatory role." Dkt. 36 at 17; Dkt. 32 at 8. The doctrine of judicial immunity is "an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Accordingly, "judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved with engaging in discovery and eventual trial." *Id.* Thus, the Supreme Court has recognized that "immunity applies even when the judge is accused of acting maliciously and corruptly." *Pierson v. Ray*, 386 U.S. 547, 554 (1967).

Here, there is no question that Aschmann was performing his duties in an adjudicative role. As courts across the country recognize, hearing officers performing their duties under the IDEA

are performing quasi-judicial functions that entitle them to judicial immunity. *See Luo v. Owen J. Roberts Sch. Dist.*, 2023 WL 5600965, at *6 (3d Cir. Aug. 30, 2023); *Indep. Sch. Dist. No. 283, St. Louis Park, Minn. v. S.D. By & Through J.D.*, 948 F. Supp. 860, 878 (D. Minn. 1995), *aff'd sub nom. Indep. Sch. Dist. No. 283 v. S.D. by J.D.*, 88 F.3d 556 (8th Cir. 1996) ("Undoubtedly, as an adjudicator, the HRO is wholly insulated from a claim which arises from her conduct as an adjudicator, by the principles of judicial immunity."); *Benson v. Lancaster Cnty. Sch. Dist.*, 2023 WL 3455629, at *4 (D.S.C. May 15, 2023) ("LHO Murphy, SRO Zirkel, and SRO Yell are judicial officers, who enjoy absolute immunity 'for their judicial acts, even when such acts are in excess of their jurisdiction, and alleged to have been done maliciously or corruptly.'"). Plaintiff's argument in this regard is that Aschmann exhibited bias and deprived Plaintiff of certain procedural protections. Such allegations, however, are not sufficient to deprive Aschmann of the protection of judicial immunity. *See Luo*, 2023 WL 5600965, at *6 (holding that hearing officer was entitled to immunity even "if the Hearing Officer's action 'was in error, was done maliciously, or was in excess of his authority'"); *Benson*, 2023 WL 3455629, at *4 (holding that "judicial immunity is not overcome by allegations of bad faith or malice"). Accordingly, Aschmann is entitled to judicial immunity and Count IV will be dismissed.

B. Section 1983 Claim Against Coons

Plaintiff asserts a Section 1983 claim against Coons in her "independent capacity." Dkt. 26 at 27. As an initial matter, the Court notes that "an 'independent capacity' suit does not exist[] for § 1983 claims." *Clemons v. City of Greensboro*, 2022 WL 1591966, at *3 n.7 (M.D.N.C. May 19, 2022). As Plaintiff acknowledges in his Opposition, this reference is an error, and the claim was intended to be asserted against Coons in her "individual capacity." Dkt. 45 at 6.

In this regard, Plaintiff agrees that Coons "recites the correct individual-capacity standard." *Id.* at 7. In an "individual capacity" claim, the plaintiff must "show that the official, acting under color of state law, caused the deprivation of a federal right." *Palmer v. Small*, 2025 WL 2676571, at *8 (E.D. Va. Sept. 18, 2025) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). "[A] plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Octave v. Wade*, 2017 WL 465467, at *3 (E.D. Va. Feb. 3, 2017) ("Liability under 42 U.S.C. § 1983 . . . requires individual involvement in the constitutional wrongs alleged in the complaint . . . ."). Here, Plaintiff has failed to do so.

*First*, to the extent that the claim is asserted against Coons in her individual capacity, the Amended Complaint fails to allege that *Coons* did anything that caused the deprivation. The only allegations in the Amended Complaint specific to Coons are that, in 2023, she requested that a survey be conducted regarding special education in the state and, as part of that report, "Parents expressed dissatisfaction." Dkt. 1 ¶ 83. The report also made certain recommendations. *Id.* ¶ 84. Additionally, in 2025, a second report made recommendations regarding the due process hearing procedures. *Id.* ¶¶ 85-87. Coons otherwise does not appear in the Amended Complaint and, indeed, her name only appears four times in the entire document. *See generally* Dkt. 26. Even where Plaintiff makes allegations regarding liability, Plaintiff makes general assertions regarding the "actions and omissions of Defendants," without specifying anything personal to Coons. *Id.* ¶ 168; *Haley v. Josey*, 2010 WL 705907, at *3 (D.S.C. Feb. 24, 2010) ("The law is clear that personal participation of a defendant is a necessary element of a § 1983 claim against a government official in his individual capacity."); *Williams v. Bd. of Trs. of Frederick Cmty. Coll.*, 2004 WL 45517, at *3-*4 (D. Md. Jan. 8, 2004) (dismissing claims filed under Section 1983 where plaintiff

failed to allege facts specific to named defendants because "[w]ithout such personal involvement, th[ose] defendants [could] not be liable in an individual capacity for constitutional infractions alleged against them"). Accordingly, the claim against Coons will be dismissed in this regard.

*Second*, to the extent that Plaintiff attempts to premise a claim against Coons on supervisory liability, this is not clear from the Amended Complaint, and a complaint may not be amended in opposition to a motion to dismiss. Nonetheless, the Court considers that argument and finds that Plaintiff has failed to plausibly allege a supervisory claim. To state a claim for supervisory liability, a plaintiff must show: (i) that the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed a "pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (ii) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (iii) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered. *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014). At the outset, Plaintiff has failed to allege knowledge. Plaintiff's allegations in this regard rest on the 2023 Report that Coons commissioned. Dkt. 26 ¶ 83. As Plaintiff has alleged, that 2023 Report found that "Parents expressed dissatisfaction with the *perceived* partiality of special education due process hearing officer who, they *believe*, rule disproportionately in favor of divisions." *Id.* (emphasis added). Thus, based on the allegations of the Amended Complaint, the 2023 Report established a perception problem by important stakeholders in the IDEA process, but the allegations regarding its contents do not establish that there was any constitutional deprivation. Nor does the Amended Complaint otherwise allege that systemic bias existed. Moreover, although Plaintiff's Opposition asserts that there is a "reasonable inference at the pleading stage" that Coons' response was inadequate, such an inference is

unwarranted where Plaintiff has alleged *no facts* regarding her response and where the recommendations in the 2023 Report were predicated on changes that required legislative approval. *See* Dkt. 45 at 9; Dkt. 26 ¶ 84. Accordingly, Count VII will be dismissed as to Coons.[2]

C. Section 1983 Claim Against the VDOE

Section 1983 applies only to persons. *See* 42 U.S.C. § 1983 ("Every *person* who, under color of statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."). Thus, the Supreme Court has recognized that a state and its agencies (like the VDOE) are not "persons" amenable to suit under Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67-68, 71 (1989); *see also Billips v. Stransky*, 2025 WL 84217, at *1 (W.D. Va. Jan. 13, 2025) (recognizing that a state agency is not a person for purposes of Section 1983) (citing cases). Courts have therefore dismissed Section 1983 claims against public departments of education on this basis. *See, e.g.*, *Adams v. Recovery Sch. Dist. ex rel. La., Dep't of Educ.*, 463 F. App'x 297 (5th Cir. 2012) (holding department of education "is an arm of the state of Louisiana, and does not qualify as a 'person' who may be sued under § 1983"). Accordingly, Count VII is also dismissed with respect to the VDOE.

[2] Defendants also correctly note that a claim pursuant to *Ex Parte Young*, 209 U.S. 123 (1908) is not properly asserted against Coons in her individual capacity – which is the only capacity identified in the Amended Complaint. Furthermore, to the extent that Plaintiff attempts to argue that Coons is sued in both her individual and official capacities, such argument is belied by the allegations in the Amended Complaint. Moreover, as Plaintiff concedes in his Opposition, Coons is no longer the Superintendent of Public Instruction and, thus, *cannot* be sued in her official capacity because she has no such capacity. Dkt. 45 at 12-13. Accordingly, to the extent Plaintiff attempts to assert a claim under *Ex Parte Young* against Coons in her individual capacity, it is dismissed.

D. Rehabilitation Act and ADA Claims Against the VDOE

Defendant correctly asserts (and Plaintiff does not dispute) that the "Fourth Circuit treats claims under the Rehabilitation Act and the ADA as the same" and that such claims can be "combined for analytical purposes because the analysis is substantially the same." *Koon v. North Carolina*, 50 F.4th 398, 403, n.2 (4th Cir. 2022). Accordingly, the Court (like the parties) will analyze Counts II, III, V, and VI asserted against the VDOE in tandem.

i. Failure to State a Claim

As an initial matter, the Court notes that Plaintiff cited no case authority with respect to whether Plaintiff had plausibly stated a claim in regard to these counts. The Court therefore assumes that Plaintiff does not dispute the applicability of the cases cited by Defendant.

To obtain compensatory damages for claims under either the Rehabilitation Act or the ADA, a plaintiff must prove intentional discrimination. *See Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 830 n.9 (4th Cir. 1994); *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 470 (4th Cir. 1999). This requirement can be met by showing deliberate indifference. *See Basta v. Novant Health Inc.*, 56 F.4th 307, 316 (4th Cir. 2022). Deliberate indifference requires a plaintiff to plausibly plead that a defendant (1) "*knew* that harm to a federally protected right was substantially likely" and (2) "*failed to act* on that likelihood." *See Basta*, 56 F.4th at 317 (emphasis in original). "Deliberate indifference is, at bottom, an actual-notice standard." *Koon*, 50 F.4th at 406 (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277 (1998)). Much like the allegations made with respect to Coons' alleged supervisory liability, Plaintiff has failed to demonstrate that the VDOE acted intentionally or was deliberately indifferent to discrimination. In this regard, Plaintiff merely alleges that the VDOE was on notice that parents were dissatisfied with the IDEA process and, in particular, had concerns regarding the bias of hearing officers. Dkt. 26 ¶ 83. But Plaintiff alleges

no facts establishing that those parents' concerns were warranted or demonstrated actual bias. Moreover, Plaintiff has failed to allege any facts with respect to what VDOE did or did not do with that information. Presumably, Plaintiff seeks an inference that VDOE did nothing. But in the absence of any factual allegations, such inference is unsupported, and Plaintiff cannot amend his complaint through an opposition brief. *See Oku v. Trumbull Ins. Co.*, 2026 WL 801263, at *3 (E.D. Va. Mar. 23, 2026). Indeed, the only allegations in this regard are that: (i) parents believed that hearing officers were biased in 2023 and (ii) in 2025, Plaintiff asserts that he was the victim of a biased hearing officer. This is not sufficient to demonstrate deliberate indifference on the part of VDOE.

ii. Exhaustion of Administrative Remedies

With respect to Plaintiff's requests for equitable relief, the VDOE argues that Plaintiff has failed to exhaust the administrative remedies available under the IDEA. Dkt. 32 at 7. Pursuant to 20 U.S.C. § 1415(l), "before filing an action under the ADA, the Rehabilitation Act, or similar laws . . . that seeks relief that is also available under the IDEA," a plaintiff "must exhaust the IDEA's procedures." *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 165 (2017) (cleaned up). To meet this standard, the Supreme Court has held that the suit must seek relief "for the denial of a FAPE" and that, in determining whether a suit seeks such relief, "a court should look to the substance, or gravamen, of the plaintiff's complaint." *Id.*

Here, Plaintiff asserts the following: (i) Count II – denial of equally effective instruction; (ii) Count III – limitation of Student's rights, privileges, advantages, or opportunities; (iii) Count V – Defendant "failed and refused to reasonably accommodate and/or modify the services need by Student due to his disability" and was denied "the ability to communicate and benefit from instruction; and (iv) Count VI – Student was "excluded from participation in or . . . denied the

benefits of the services, programs, or activities of Defendants." Dkt. 26. With respect to these claims, Plaintiff seeks "compensatory education services for Student's benefit." *Id.* at 30. As the Fourth Circuit has acknowledged "compensatory education" services is available relief under the IDEA. *See G ex rel. RG v. Ft. Bragg Dependent Schs.*, 343 F.3d 295, 309 (4th Cir. 2003) (holding that the "district court's rejection of the compensatory education claim was based on an erroneous legal conclusion"). Plaintiff does not allege that the VDOE was a party to the due process hearing; rather, Plaintiff argues only that "Plaintiff brought a due process complaint against the local educational agency, Prince William County School Board." Dkt. 36 at 7. Accordingly, "plaintiff[ was] required to name the state defendants as parties in [his] due-process complaint." *Vlasaty v. Wake Cty. Pub. Sch. Sys. Bd. of Educ.*, 2018 WL 4515877, at *10 (E.D.N.C. Sept. 20, 2018); *McGraw v. Board of Educ.*, 952 F. Supp. 248, 254 (D. Md. 1997) ("Plaintiffs' allegations under IDEA are not properly before the Court, as Plaintiffs have failed to exhaust administrative remedies against the State Defendants.").

Plaintiff argues that engaging in the administrative process would have been futile. In this regard, Plaintiff makes a sweeping argument that exhaustion would have been futile because "[t]he very entity for ensuring impartial hearings cannot serve as an impartial adjudicator of claims challenging the impartiality of the system it administers." Dkt. 36 at 10. Plaintiff's argument in this regard suffers two flaws. *First*, such a broad argument would preclude exhaustion of *any* claim against a state entity. In addition, courts within this Circuit have recognized that plaintiffs are required to exhaust such claims. Plaintiff also cites no authority that claims against a state educational authority are immune from the exhaustion requirement on the basis of futility. *Second*, the claims that are unexhausted *are not* claims of systemic bias. Rather, as noted *supra*, they are claims that related to "denial of equally effective instruction" and the denial of "benefits of the

services, programs, or activities of Defendants." Dkt. 26. Such claims are of the same nature as the denial of a FAPE and, thus, within the purview and expertise of the due process hearing process. *Third*, even if Plaintiff's unexhausted claims *did* relate to claims of systematic bias, Plaintiff has not alleged systematic bias; Plaintiff has merely alleged that, in response to a survey, survey participants expressed dissatisfaction and concerns regarding due process hearing officers. Dkt. 26 ¶ 83. Thus, Plaintiff has not established that exhaustion would be futile.

* * *

In sum, to the extent Counts II, III, V, and VI are premised on claims for damages, Plaintiff has not adequately alleged intentional discrimination. To extent such claims seek equitable relief, Plaintiff has not demonstrated that such claims are exhausted. Accordingly, Counts II, III, V, and VI will be dismissed as to the VDOE.

E. IDEA Claim Against PWCSB

With respect to Count I, the IDEA claim asserted against PWCSB, Defendant makes two arguments: (i) Plaintiff has failed to exhaust this claim; and (ii) Plaintiff has failed to establish that the Hearing Officer's decision was not regularly made. Dkt. 29 at 5-10. The Court will address each argument in turn.

i. Failure to Exhaust

As discussed *supra*, the IDEA requires plaintiffs to administratively exhaust their claims before seeking relief in federal court. *See* 20 U.S.C. § 1415(l). Exhaustion is not jurisdictional, but operates as a claims-processing rule. *See K.I. v. Durham Pub. Sch. Bd. of Educ.*, 54 F.4th 779, 792 (4th Cir. 2022). "If properly invoked, mandatory claim-processing rules must be enforced, but they may be waived or forfeited." *Hamer v. Neighborhood Hous. Servs. of Chicago*, 584 U.S. 17, 20 (2017). The exhaustion required also applies to "claims brought under the ADA or the

Rehabilitation Act that seek restitution for the denial of a FAPE through remedies available under the IDEA." *C.A. by C.A. v. Bd. of Directors of Corvian Cmty. Sch.*, 2023 WL 5747149, at *4 (W.D.N.C. Sept. 6, 2023).

Here, Plaintiff failed to exhaust his IDEA claims because the due process claim was dismissed on procedural grounds prior to a determination on the merits. Dkt. 26 ¶ 66. Under the IDEA, a district court may only review a final "findings and decision" of the administrative proceedings. 20 U.S.C. § 1415(i)(2)(A). The Fourth Circuit and district courts within the Fourth Circuit have recognized that, where an underlying due process hearing is dismissed (even incorrectly), there is no exhaustion because there is no finding or decision with respect to the merits of the underlying claim. *See M.E. ex rel. C.E. v. Buncombe Cnty. Bd. of Educ.*, 72 F. App'x 940, 941 (4th Cir. 2003) ("In this case, because the ALJ incorrectly dismissed M.E.'s claim as untimely, the ALJ did not consider the merits of her claim. Consequently, there were no administrative 'findings or decision' regarding the merits of M.E.'s claim for the district court to review and the district court did not have jurisdiction under § 1415(i)(2) to consider the merits of M.E.'s claim in the first instance."); *C.A. by C.A.*, 2023 WL 5747149, at *4 ("Thus, when the administrative process does not reach the merits of an applicant's IDEA claim, but instead dismisses the claim on a procedural basis, there is no 'finding or decision' for the district court to review, and the plaintiff failed to exhaust his administrative remedies."); *see also Ozmore v. Portland Pub. Sch. Dist., 1J,* 2026 WL 1078959, at *2 (D. Or. Apr. 21, 2026) ("There is no provision providing jurisdiction to review a sufficiency decision or a decision to dismiss a complaint based on procedural grounds."). Plaintiff largely does not address this authority. Accordingly, the PW MTD will be granted in this regard.

Seeking to avoid this conclusion, Plaintiff argues that it would be futile to require further exhaustion. To begin with, Plaintiff asserts that the "hearing officer's procedural irregularities" establish futility. Dkt. 38 at 6. But each of Plaintiff's arguments concerning procedural irregularities are conclusory and not supported by the Amended Complaint. Plaintiff argues that Aschmann "imposed procedural requirements that deviated from standard practice." *Id.* But the Amended Complaint does not identify any standard practice in this regard. Moreover, Aschmann apparently failed to comply the standard practice by requiring hard copy submissions from the parties. This was a requirement that appears to have applied equally to the parties, and Plaintiff does not assert that Aschmann was without authority to impose such a requirement. Plaintiff also argues that exhaustion was futile because Aschmann denied Plaintiff's request for issuance of subpoenas. *Id.* In this regard, the *only* allegation is that the request for subpoenas was denied. Plaintiff does not make any allegation that the subpoenas were improperly denied, that Plaintiff properly made the request, or even that the subpoenas were important to any material for the due process hearing. Plaintiff also argues that Plaintiff's witnesses were excluded based on non-compliance with the procedures set forth by Aschmann. *Id.* But, again, Plaintiff does not argue that Plaintiff *did* comply with the rules. And, as Plaintiff acknowledges in the Amended Complaint, Plaintiff was not the only party to have motions denied. Dkt. 26 ¶¶ 55-56. Moreover, given Plaintiff's failure to identify any error committed by Aschmann, it is unclear why he should have recused.

In short, it is Plaintiff's burden to demonstrate futility[3] and Plaintiff has not alleged facts demonstrating that exhaustion was futile.[4] Furthermore, to the extent Plaintiff attempts to rely on harm to Student from additional process, Plaintiff's argument is conclusory at best and not supported by the Amended Complaint. Indeed, one of the requests that Plaintiff made of the PWCSB was to transfer Plaintiff to Ronald Reagan Middle School. Dkt. 26 ¶ 36. Although Plaintiff asserts that the request was denied, Parents moved to that school district and the Amended Complaint suggests that Plaintiff now attends a different school. *Id.* It is thus unclear whether any of the allegations or harms asserted by Plaintiff would continue to apply at this new school. Accordingly, the PW MTD will be granted in this regard.

As discussed *supra*, the exhaustion requirement applies not only to Count I, but to the other counts asserted by Plaintiff which rely on or are related to the alleged denial of a FAPE (that is, they seek equitable relief). Accordingly, the failure to exhaust results in the dismissal of Counts I, II, III, V, and VI.[5]

ii. Decision Regularly Made

Alternatively, PWCSB argues that Count I of the Amended Complaint should be dismissed because Plaintiff has not plausibly alleged that Aschmann's dismissal was not regularly made. When reviewing IDEA administrative proceedings, a court applies a modified "*de novo* review,"

---

[3] To demonstrate futility, a plaintiff must make a "clear and positive" showing that any pursuit of administrative remedies would be fruitless. *See Makar v. Health Care Corp.*, 872 F.2d 80, 83 (4th Cir. 1989).

[4] Furthermore, the surveys regarding perception of bias by parents involved in the process do not plausibly establish (i) that such bias exists on a general level or (ii) that there was such bias here.

[5] PWCSB further correctly notes that, to the extent the Amended Complaint seeks relief with respect to claims arising before the 2023 school year or after the 2025 school year, such claims were not exhausted at all. Dkt. 39 at 10.

giving "due weight" to the findings in the underlying proceedings. *R.F. ex rel E.F. v. Cecil Cnty. Pub. Sch.*, 919 F.3d 237, 244 (4th Cir. 2019). Courts interpret "due weight" to mean that "findings by the hearing officers [are] considered prima facie correct." *Cnty. Sch. Bd. of Henrico Cnty, Va. v. Z.P.*, 399 F.3d 298, 304 (4th Cir. 2005). Thus, to set aside a hearing officer's conclusions and afford the decision less weight – or to disregard it altogether – the Court must determine that the decision strayed "so far from the accepted norm of a fact-finding process" that it was not "regularly made." *Id*. (citing *Doyle v. Arlington County Sch. Bd*., 953 F.2d 100, 104-05 (4th Cir.1991)). In evaluating the regularity of the hearing officer's decision, the Fourth Circuit considers "the way in which the state administrative authorities have arrived at their administrative decision and the methods employed." *Doyle*, 953 F.2d at 105. When a hearing officer conducts a proper hearing, allows both sides to present evidence and testimony, and resolves the factual issues before it without "flipping a coin or throwing a dart" at a dartboard then the decision is "regularly made" and entitled to deference. *J.P. v. Sch. Bd. of Hanover Cnty.*, 516 F.3d 254, 259 (4th Cir. 2019).

Based on the allegations in the Amended Complaint, Plaintiff has failed to allege facts demonstrating that Aschmann's decision to dismiss the case was not regularly made. Plaintiff makes no allegations or arguments regarding the applicable standard procedure that Aschmann is alleged to have violated; in short, Plaintiff has not defined the standard procedure or on what it is based such that this Court could determine whether there has been a violation. Moreover, the Court cannot say that requiring hard copy submissions is irregular; indeed, in certain circumstances, this Court also requires hard copy submissions. With respect to the denial of Plaintiff's motions, Plaintiff has again failed to allege any facts supporting Plaintiff's conclusions that such rulings were irregular. The Court further notes that Plaintiff *does not* even allege that any of Aschmann's rulings were legally incorrect or that Plaintiff complied with the procedures

that Aschmann set out. Accordingly, the PW MTD will also be granted on this basis and Count I dismissed.

iii. Compensatory Damages

To the extent Plaintiff's ADA and Section 504 claims seek damages against PWCSB, Plaintiff fails to assert sufficient facts to demonstrate deliberate indifference. As discussed *supra*, deliberate indifference is required to establish an entitlement to such damages. Many of Plaintiff's allegations in this regard are conclusory or contradictory. Plaintiff asserts that his AAC device did not have sufficient battery to last the entire day, but then also asserts that he had been advised "no AAC device should be used." *Contrast* Dkt. 26 ¶ 26 *with id.* ¶ 39. With respect to the use of ASL as opposed to the AAC device, Plaintiff has not alleged facts, or cited any authority, demonstrating that this disagreement amounts to deliberate indifference. With respect to the several allegations regarding the interactions between Student and his aides, it is unclear whether Parents brought these interactions to the attention of PWCSB, the frequency with which these issues arose, whether this was an issue with a particular aide or multiple aides, and whether the problems continued from year to year. Furthermore, there are no factual allegations regarding the alleged early dismissals, including how often they occurred, whether a reason was offered for the early dismissal, and how early the dismissal occurred. With respect to the provision of ESY services, Plaintiff alleges that PWCSB provided some but not all services, but there are no allegations regarding how often and where PWCSB fell short. Dkt. 26 ¶ 43. In short, there are insufficient factual allegations to support a plausible assertion of deliberate indifference.

iv. Standing to Pursue Injunctive Relief

With respect to the relief sought, Plaintiff seeks an injunction to "cease and desist from the early dismissal of special education students from school prior to the end of the school day" and

directing PWCSB to "modify their ASL policy to include students who are not deaf or hard of hearing." Dkt. 26 at 30. PWCSB argues, pursuant to *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), Plaintiff lacks standing to seek such relief. Dkt. 29 at 15. With respect to early dismissals, Plaintiff has alleged that he was dismissed early in the 2025-2026 school year. Dkt. 26 ¶ 42. Assuming for the sake of discussion that this did indeed happen, it has been recognized that, even where a hearing officer could not grant the injunctive relief, the parents were still required to exhaust the administrative process. *See K.I. v. Durham Pub. Schs. Bd. of Educ.*, 2020 WL 3512213, at *8 (M.D.N.C.). The Fourth Circuit then affirmed that holding. *See K.I.*, 54 F.4th at 795 (affirming district court). Similarly, the failure to provide ASL services is not exhausted as to Plaintiff. With respect to the policy's application to other students, Plaintiff points to no caselaw permitting him to raise rights belonging to others outside of a class action – which this is not. Accordingly, the PW MTD will be granted in this regard.

## IV. CONCLUSION

In short, Plaintiff's Amended Complaint fails to state a claim with respect to any Defendant. The Court will, however, permit Plaintiff to amend his claims for compensatory damages as to Defendant PWCSB and the VDOE, and the Section 1983, as to the correct Defendant, the Superintendent of Public Instruction. With respect to these claims, the Court cannot say, at this stage, that further amendment would be futile.

Accordingly, it is hereby ORDERED that the Motion to Dismiss (Dkt. 28) is GRANTED; and it is

FURTHER ORDERED that the Motion to Dismiss (Dkt. 31) is GRANTED; and it is

FURTHER ORDERED that the Motion to Dismiss (Dkt. 42) is GRANTED; and it is

FURTHER ORDERED that the Amended Complaint (Dkt. 26) is DISMISSED without prejudice; and it is

FURTHER ORDERED that Counts I and IV are dismissed without prejudice and without leave to amend; and it is

FURTHER ORDERED that Counts II, III, V, and VI are dismissed without prejudice and with leave to amend to the extent that Plaintiff seeks compensatory damages; and it is

FURTHER ORDERED that Count VII is dismissed without prejudice and with leave to amend to name the correct Defendant – the Superintendent of Public Instruction – but not as to Defendants Coons or the VDOE specifically; and it is

FURTHER ORDERED that Plaintiff is DIRECTED to file any Second Amended Complaint within THIRTY (30) DAYS from the issuance of this Memorandum Opinion and Order. Plaintiff is further WARNED that, if Plaintiff fails to file a Second Amended Complaint in that timeframe, the Court will close this case for failure to follow Court Orders and failure to prosecute pursuant to Federal Rule of Civil Procedure 41.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to all parties.

It is SO ORDERED.

Alexandria, Virginia
September 10, 2026

/s/

Rossie D. Alston, Jr.
United States District Judge